IN THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| LAKEISHA CHESTNUT, *et al.*,<br><br>　　　　Plaintiffs,<br><br>　v.<br><br>JOHN H. MERRILL, in his official capacity as Alabama Secretary of State,<br><br>　　　　Defendant. | Civil Action No. 2:18-cv-907-KOB |

**PLAINTIFFS' BRIEF IN RESPONSE TO THE ORDER TO SHOW CAUSE AND IN
OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

#### I.     INTRODUCTION

Defendant John H. Merrill, Alabama Secretary of State, has moved to dismiss the Plaintiffs' Complaint and filed a "Notice of Jurisdictional Issue"[1] based on a severe misinterpretation and mischaracterization of Section 2 of the Voting Rights Act of 1965, as amended (the "VRA"), and Plaintiffs' claims. Plaintiffs challenge the Alabama congressional map—which was passed by the state legislature in 2011 and is now codified at Ala. Code § 17-14-70—on the grounds that it violates Section 2 of the Voting Rights Act, 52 U.S.C. § 10301. ECF No. 1 ("Compl.") ¶ 1. Plaintiffs' Section 2 claim is the *sole* claim asserted by Plaintiffs. Plaintiffs do not bring any claims under the United States Constitution. Plaintiffs do not challenge any district in the 2011 Map as a racial gerrymander under either the Fourteenth or Fifteenth Amendments. Indeed, Plaintiffs' Complaint only makes reference to the terms "racial gerrymander" or "racial gerrymandering" when discussing the history of racial discrimination in voting in Alabama, a critical part of alleging that the "totality of the circumstances" support Plaintiffs' Section 2 claim. *See* Compl. ¶¶ 32, 74, 77.

In his "Notice of Jurisdictional Issue," Defendant raises a question as to whether Plaintiffs' statutory claim brought under the VRA should be assigned to a three-judge court pursuant to 28 U.S.C. § 2284. In so doing, Defendant conflates Plaintiffs' Section 2 claim with racial gerrymandering claims brought under the Fourteenth and/or Fifteenth Amendments, despite the fact that Plaintiffs' Section 2 claim is undoubtedly statutory, not constitutional. Further, courts have repeatedly drawn a distinction between vote dilution claims brought under Section 2 of the

---

[1] Plaintiffs hereby respond to the Motion to Dismiss, ECF No. 11, Notice of Jurisdictional Issue, ECF No. 12, and Order to Show Cause, ECF No. 13.

VRA and racial gerrymandering claims brought under the U.S. Constitution. *See Miller v. Johnson*, 515 U.S. 900, 911 (1995) (a claim of racial gerrymandering is "analytically distinct" from a vote dilution claim); *see also Bethune-Hill v. Virginia State Board of Elections*, 141 F.Supp.3d 505, 512 (E.D.Va. 2015) (same), *vacated in part on other grounds*, *Bethune-Hill v. Virginia State Board of Elections*, 137 S. Ct. 788 (2017); *Ala. Legislative Black Caucus v. Alabama*, 989 F. Supp. 2d 1227, 1290 (M.D. Ala. 2013) (same), *rev'd on other grounds*, *Alabama Legis. Black Caucus v. Alabama*, 135 S. Ct. 1257 (2015). Because Plaintiffs have only alleged a Section 2 claim—not a constitutional claim—a three judge court is not authorized by 28 U.S.C. § 2284, and this case is properly before a single district judge.

Defendant's argument that Plaintiffs lack standing also fails because Plaintiffs alleged that they live in either "cracked" or "packed" congressional districts, and that as a result, their votes are diluted in violation of Section 2. In any event, Defendant's standing arguments are mooted by Plaintiffs' Amended Complaint, which makes clear that several Plaintiffs, a number of whom were listed in the original Complaint, live in areas that could be drawn into a new majority African-American congressional district in order to remedy the current Section 2 violation. *See* ECF No. 14 ("Am. Compl.") ¶¶ 13, 14, 18, 19, 21, 22.

## II. LEGAL STANDARD

A motion to dismiss brought under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a complaint, which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8. A complaint does not require detailed factual allegations; it simply must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).

A Rule 12(b)(1) attack that challenges the subject matter jurisdiction alleged on the face of the pleadings requires the court to accept the sufficiency of the allegations as true. Fed. R. Civ. P. 12(b)(1). Though the burden is on the plaintiffs to establish standing, "[a]t the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss [the court] 'presum[es] that general allegations embrace those specific facts that are necessary to support the claim.'" *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992) (citation omitted).

### III.   ARGUMENT

**A.  This case is properly before a single district judge.**

Pursuant to 28 U.S.C. § 2284, "[a] district court of three judges shall be convened when otherwise required by Act of Congress, or when an action is filed *challenging the constitutionality* of the apportionment of congressional districts or the apportionment of any statewide legislative body" (emphasis added). Defendant contends that there is "at least a question of whether the three-judge court statute is implicated in this case." ECF No. 12 ("Not. of Juris. Issue") at 5. But under the plain language of the statute, three-judge courts are convened only where plaintiffs raise constitutional claims, not statutory claims. Because Plaintiffs bring only one claim under Section 2 of the VRA—and no constitutional claims—this case is properly before a single district judge.

Defendant makes several erroneous arguments to distract from the plain language of 28 U.S.C. § 2284. This Court should reject each argument in turn. *First*, Defendant conflates Plaintiffs' VRA claim with a racial gerrymandering claim in a purported attempt to transform Plaintiffs' VRA claim into a constitutional claim, which would make the three-judge statute relevant. *See*, *e.g.*, Not. of Juris. Issue at 1-2 ("Whereas most racial gerrymandering claims have,

3

at least in recent history, been brought under both the Constitution (specifically the Fourteenth and Fifteenth Amendments) and the Voting Rights Act, Plaintiffs bring this challenge to Alabama's 2011 Congressional District Plan solely under Section 2 of the Voting Rights Act, 52 U.S.C. § 10301(a)."). While Defendant correctly acknowledges that Plaintiffs' claim was brought *solely under the VRA*, Defendant mischaracterizes Plaintiffs' Section 2 claim when he refers to it as a racial gerrymandering claim. Plaintiffs do not allege racial gerrymandering at all in their Complaint; they allege only that their voting power has been diluted in violation of Section 2 of the Voting Rights Act. Courts have repeatedly made clear that vote dilution claims brought under Section 2 of the VRA are separate and distinct from racial gerrymandering claims brought under the Constitution. *See Miller*, 515 U.S. at 911 (a claim of racial gerrymandering is "analytically distinct" from a vote dilution claim); *see also Bethune-Hill*, 141 F.Supp.3d at 512 (same); *Ala. Legislative Black Caucus*, 989 F. Supp. 2d at 1290.[2]

Given the distinction between Section 2 claims and racial gerrymandering claims, Defendant is misguided when he states that "there is no practical difference in the way this claim

---

[2] Defendant is also mistaken in asserting that "most racial gerrymandering claims . . . in recent history" have been brought under both the Constitution and the VRA. *See, e.g.*, *Bethune-Hill v. Virginia State Board of Elections*, No. 3:14-cv-852, 2018 WL 3133819 (E.D.Va. June 26, 2018) (challenging eleven Virginia state legislative districts as racial gerrymanders under the Equal Protection Clause of the Fourteenth Amendment); *Harris v. McCrory*, 159 F.Supp.3d 600 (M.D.N.C. 2016), *aff'd sub nom. Cooper v. Harris*, ––– U.S. –––, 137 S.Ct. 1455, 197 L.Ed.2d 837 (2017) (challenging the constitutionality of two North Carolina congressional districts as racial gerrymanders in violation of the Equal Protection Clause of the Fourteenth Amendment); *Page v. Virginia State Board of Elections*, No. 3:13-cv-678, 2015 WL 3604029 (E.D.Va. June 5, 2015), *aff'd sub nom. Wittman v. Personhuballah*, 136 S.Ct. 1732 (2016) (challenging Virginia's third congressional district as a racial gerrymander under the Equal Protection Clause of the Fourteenth Amendment). None of these racial gerrymandering cases involved VRA claims, further evidencing the analytically distinct and drastically different nature of the two legal doctrines.

will be litigated, or decided, under Section 2 and how it would have been treated if brought under the Fourteenth or Fifteenth Amendments directly." Not. of Juris. Issue at 2. Plaintiffs allege vote dilution, and vote dilution claims are properly alleged under Section 2 of the VRA. The Supreme Court has held that "[t]he essence of a § 2 claim is that a certain electoral law, practice, or structure interacts with social and historical conditions to cause an inequality in the opportunities enjoyed by black and white voters to elect their preferred representatives." *Thornburg v. Gingles*, 478 U.S. 30, 47 (1986). In *Gingles*, the Court identified three necessary preconditions ("the *Gingles* preconditions") for a claim of vote dilution under Section 2 of the Voting Rights Act: (1) the minority group must be "sufficiently large and geographically compact to constitute a majority in a single-member district"; (2) the minority group must be "politically cohesive"; and (3) the majority must vote "sufficiently as a bloc to enable it . . . usually to defeat the minority's preferred candidate." *Gingles*, 478 U.S. at 50-51. Once all three preconditions are established, the statute directs courts to consider whether, under the totality of the circumstances, members of a racial group have less opportunity than other members of the electorate to participate in the political process and to elect representatives of their choice. 52 U.S.C. § 10301(b). The Senate Report on the 1982 amendments to the Voting Rights Act identifies several non-exclusive factors that courts should consider when determining if, under the totality of the circumstances in a jurisdiction, the operation of the electoral device being challenged results in a violation of Section 2. The remedy for a Section 2 vote dilution claim is the creation of one or more additional districts in which minority voters have the opportunity to elect their preferred candidates. *See Montes v. City of Yakima*, 40 F. Supp. 3d 1377, 1390 (E.D.Wa. 2014) ("[D]rawing a minority district in which

minority voters represent more than 50% of all eligible voters confirms that an effective remedy can be fashioned."). None of these issues are elements of a racial gerrymandering claim.

By contrast, racial gerrymandering claims under the Constitution are adjudicated under a different legal standard, to address a different legal harm, and to provide a different legal remedy. Specifically, racial gerrymandering claims are "district-specific," *Ala. Leg. Black Caucus v. Alabama,* 135 S. Ct. 1257, 1265 (2015), and plaintiffs who bring racial gerrymandering claims under the Equal Protection Clause of the Fourteenth Amendment must prove that "race was the predominant factor motivating the legislature's decision to place a significant number of voters within or without a particular district," *Bethune-Hill*, 137 S. Ct. at 794. Once plaintiffs have shown predominance, the burden shifts to the State to demonstrate that its districting legislation is narrowly tailored to achieve a compelling state interest. *Id*. at 801. The harms that flow from racial gerrymandering or racial sorting include being personally subjected to a racial classification as well as being represented by a legislator who believes his primary obligation is to represent only the members of a particular racial group. *See Alabama*, 135 S. Ct. at 1261. The remedy for a racial gerrymandering claim is not the creation of an additional majority-minority district; it is the creation of a map that remedies the legislature's unjustified sorting of voters based on the color of their skin. Plaintiffs' VRA claim is thus analytically and practically distinct from a constitutional claim. Under the plain language of 28 U.S.C. § 2284, it is clear that Plaintiffs' claim is properly before a single district judge. This Court should reject Defendant's attempt to morph Plaintiffs' statutory claim into something that it is not.

*Second*, Defendant incorrectly asserts that the Third Circuit in *Page v. Bartels*, 248 F.3d 175 (3d Cir. 2001), "held that 28 U.S.C. § 2284 should be construed to reach claims brought under

6

the Voting Rights Act." Not. of Juris. Issue at 2. Later in his brief, Defendant not only recognizes that the Third Circuit's holding in *Page* is not binding on this Court, but he concedes that the Third Circuit's holding in *Page* "is not directly on point" in this case. *Id*. at 4. Plaintiffs agree. In *Page*, plaintiffs challenged a districting map on both Section 2 and constitutional grounds, and the court was confronted with the legal issue of whether a single district court judge could decide the statutory Section 2 issues first without addressing the constitutional issues that are required to be considered by a three-judge court. The *Page* court succinctly summarized its holding:

> Based upon this history, we conclude that because statutory Voting Rights Act challenges to statewide legislative apportionment are generally inextricably intertwined with constitutional challenges to such apportionment, those claims should be considered a single 'action' within the meaning of § 2284(a). Thus, when a single district judge is presented with both types of claims, he or she may not resolve the Voting Rights Act issues in isolation while reserving the constitutional claims to a three-judge court; rather, the single district judge should adhere to the limitations on his [or her] authority imposed by § 2284(b)(3). *Id*. at 190.

Under the court's reasoning, because 28 U.S.C. § 2284 references a single legal "action," and the various claims in that case comprised the action, the Court held that the statutory claims and constitutional claims must be considered together. However, where the legal "action" consists of only one claim, and that claim is statutory—as is the case here—then it is properly decided by a single district court judge. The *Page* holding thus has no bearing on this case. Indeed, Defendant has not identified a single case in which a three-judge court considered an action in which Plaintiffs brought only a Section 2 claim.

Further, as the *Page* court pointed out, certain sections of the Voting Rights Act specifically require a three-judge panel to be convened. *See* 52 U.S.C. § 10304 ("Any action under this section [5] shall be heard and determined by a court of three judges in accordance with the provisions of

7

section 2284 of Title 28 and any appeal shall lie to the Supreme Court."); *see also* 52 U.S.C. § 10306 (with respect to the statutory prohibition on the payment of poll taxes, "[t]he district courts of the United States shall have jurisdiction of such actions which shall be heard and determined by a court of three judges in accordance with the provisions of section 2284 of Title 28 and any appeal shall lie to the Supreme Court"). Section 2 does not contain similar language. In response, Defendant contends that when 28 U.S.C. § 2284 was narrowed in 1976 to require that three-judge courts hear challenges to the "constitutionality" of apportionment plans, there was no cause of action for apportionment plans under Section 2 because the 1982 amendments to the VRA had not yet been passed.[3] But even if apportionment plans were not commonly challenged under Section 2 until after the 1982 amendments to the VRA, Congress has had more than three decades to amend either Section 2 or 28 U.S.C. § 2284 to mandate that Section 2 claims (or more generally, VRA claims) be decided by a three-judge court. It has not done so. Accordingly, the plain language of Section 2 and the three-judge statute must govern.

Defendant concludes his brief by stating that to his knowledge, "no decision from this Circuit, or any other, answers the specific question presented here." Not. of Juris. Issue at 4. Undoubtedly, the reason why this issue has not come up in litigation is because the plain language of the three-judge statute is clear: Section 2 claims are statutory, and thus 28 U.S.C. § 2284 does

---

[3] As discussed above, Defendant's assertion that there was no cause of action under Section 2 for vote dilution in the redistricting context prior to the 1982 amendments to the VRA is irrelevant because the plain language of 28 U.S.C. § 2284 makes clear that it does not apply to actions that contain only statutory claims. In addition, however, Defendant's underlying claim that Section 2 was not available for reapportionment challenges prior to 1982 seems dubious at best. *See*, *e.g.*, *U.S. v. Uvalde Consol. Independent School Dist.*, 625 F.2d 547 (5th Cir. 1980) (Section 2 "was intended to provide the Attorney General with a means of combatting the use of at-large districting plans to dilute the Mexican-American vote[,]" and thus complaint stated cause of action).

not apply. This Court should follow the plain language of 28 U.S.C. § 2284 and find that this case is properly before a single district court judge.

### B. Plaintiffs have filed an amended complaint that moots Defendant's motion to dismiss based on standing.

Defendant contends that Plaintiffs lack standing because they have not alleged that they "would actually or even likely" reside in the second majority African-American congressional district that Plaintiffs seek as a remedy to the Section 2 violation. ECF No. 11 ("Mot. to Dismiss") at 5. Once again, however, Defendant's argument rests on his mistaken conflation of Section 2 claims with racial gerrymandering claims, each of which has very different standards for establishing standing. Voters who live in both "cracked" and "packed" districts have standing to bring a challenge under Section 2. *Gingles*, 478 U.S. at 46 n. 11 (vote dilution "may be caused by the dispersal of blacks into districts in which they constitute an ineffective minority of voters or from the concentration of blacks into districts where they constitute an excessive majority"). The Southern District of Florida described the standing requirement for a Section 2 plaintiff as the obligation to "show that he or she (1) is registered to vote and resides in the district where the discriminatory dilution occurred; and (2) is a member of the minority group whose voting strength was diluted. *Broward for Fair Districts v. Broward County*, 2012 WL 1110053 (N.D. Fla. Apr. 3, 2012).

Courts have routinely held that Section 2 plaintiffs (including those who live in existing majority-minority districts) satisfy standing requirements where they allege that they "reside in a reasonably compact area that could support additional [majority-minority districts or "MMDs"]." *See*, *e.g.*, *Pope v. Cty. of Albany*, No. 1:11-CV-0736, 2014 WL 316703, at *5 (N.D.N.Y. Jan. 28, 2014) ("Here, Plaintiffs have identified a personalized injury: that the apportionment of 4 MMDs

9

to the sufficiently numerous and geographically compact minority population, as opposed to the 5 MMDs that Plaintiffs contend are required by the VRA, dilutes Plaintiffs' individual voting power- including those in existing MMDs."). The "personalized injury" that Section 2 plaintiffs face is dilution of their "individual voting power" by the creation of fewer majority-minority districts for the "sufficiently numerous and geographically compact minority population." *Id*. The State's failure to create the additional majority-minority districts "that Plaintiffs contend are required by the VRA," and the resulting dilution of plaintiffs' individual voting power, confers sufficient injury for plaintiffs to litigate their claims. *Id*.

Defendant's standing challenge, by contrast, rests on the standing rule established for racial gerrymandering claims brought under the Equal Protection Clause, not Section 2. *See* Mot. to Dismiss at 3 (citing *United States v. Hays*, 515 U.S. 737 (1995)). But the voters in *Hays* lacked standing "because they did not challenge the constitutionality of their own district or area." *Pope*, 2014 WL 316703, at *6. Just as in *Pope*, Plaintiffs here, "in addition to making their claim under Section 2 as opposed to the Fourteenth Amendment, challenge the drawing of district lines in a compact area" where they reside. *Id*. Defendant's failure to cite a Section 2 case in support of his argument, let alone articulate the proper bases for Section 2 standing, reveals the fundamental flaws in his argument.

In any event, Plaintiffs have now filed an Amended Complaint to clearly allege that they live in geographic areas that could constitute part of a new majority African-American congressional district in Alabama as a remedy for the Section 2 violation. *See* Am. Compl. ¶¶ 13, 14, 18, 19, 21, 22; *see also* Fed. R. Civ. P. 15(a)(1)(B) (a party may amend as a matter of course within 21 days after service of a responsive pleading or service of a motion under Rule 12(b), (e),

or (f), whichever is earlier). Defendant's argument that Plaintiffs lack standing is therefore now moot. *See Dresdner Bank AG v. M/V Olympia Voyager*, 463 F.3d 1210, 1215 (11th Cir. 2006) (an amended complaint supersedes the original complaint, and thus renders moot a motion to dismiss the original complaint).[4]

## IV.   CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendant's Motion to Dismiss and find that this case is properly before a single district judge.

---

[4] In a footnote, Defendant purports to "reserve[] the right" to raise an argument for dismissal in a subsequent motion, citing to an argument raised by a defendant in another jurisdiction. Mot. to Dismiss at 6 n.2. But Defendant may not raise arguments in support of a second Rule 12(b) motion to dismiss that he could have raised in his first motion to dismiss. Fed. R. Civ. P. 12(h). Additionally, Defendant's argument that Plaintiffs failed to properly allege the first *Gingles* precondition is both demonstrably false and in any event now moot. *See* Am. Compl. ¶ 6 n. 1.

Dated:  July 23, 2018                    Respectfully submitted,

By /s/ *Aria Branch*
Marc Erik Elias (*admitted pro hac vice*)
Bruce V. Spiva (*admitted pro hac vice*)
Aria C. Branch (*admitted pro hac vice*)
**Perkins Coie, LLP**
700 13th St. N.W., Suite 600
Washington, D.C. 20005-3960
Phone: (202) 654-6338
Fax: (202) 654-9106
Email: MElias@perkinscoie.com
Email: ABranch@perkinscoie.com

Abha Khanna (*admitted pro hac vice*)
**Perkins Coie, LLP**
1201 Third Avenue, Ste. 4900
Seattle, WA 98101-3099
Phone: (206) 359-8000
Fax: (206) 359-9000
Email: AKhanna@perkinscoie.com

By: *Richard P. Rouco* (AL Bar. No. 6182-R76R)
**Quinn, Connor, Weaver, Davies & Rouco LLP**
Two North Twentieth
2-20th Street North, Suite 930
Birmingham, AL 35203
Phone: (205) 870-9989
Fax: (205) 803-4143
Email: rrouco@qcwdr.com

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

     I hereby certify that on the 23rd day of July 2018, I filed the foregoing Plaintiffs' Brief in Response to the Order to Show Cause and in Opposition to Defendant's Motion to Dismiss with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

By /s/ *Aria Branch*
Aria C. Branch (*admitted pro hac vice*)
**Perkins Coie, LLP**
700 13th St. N.W., Suite 600
Washington, D.C. 20005-3960
Phone: (202) 654-6338
Fax: (202) 654-9106
Email: ABranch@perkinscoie.com

*Counsel for Plaintiffs*