FILED

2018 Sep-10  PM 08:42
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| LAKEISHA CHESTNUT, *et al.*, | Civil Action No. 2:18-cv-907-KOB |
| Plaintiffs, | |
| v. | |
| JOHN H. MERRILL, in his official capacity as Alabama Secretary of State, | |
| Defendant. | |

**PLAINTIFFS' RESPONSE TO ORDER TO SHOW CAUSE AND
BRIEF IN OPPOSITION TO SENATOR JIM MCCLENDON'S
MOTION TO INTERVENE**

## I.     INTRODUCTION

Plaintiffs LaKeisha Chestnut, Marlene Martin, Bobby DuBose, Rodney Love, Janice Williams, Karen Jones, Roderick Clark, John Harris, Minnie Austin, and Joseph Boykins (collectively, "Plaintiffs") submit this response to the Court's Order to Show Cause, Dkt. No. 21, and in opposition to the motion for permissive intervention of Senator Jim McClendon, Dkt. No. 19.[1] This case presents no unusual circumstances to justify a legislator's permissive intervention. To the contrary, the Defendant Secretary of State's vigorous defense of this action adequately represents Senator McClendon's interest in upholding the congressional plan against Plaintiffs' Voting Rights Act challenge. Moreover, Senator McClendon's belated entry promises to unduly delay the progress of this matter to the detriment of a prompt adjudication of the original parties' rights, as illustrated by the motion to dismiss he proposed 21 days *after* the original and proper Defendant answered Plaintiffs' amended complaint. Accordingly, this Court should exercise its discretion to deny the motion to intervene.

---

[1] Contrary to section IV.B this Court's Initial Order, Dkt. No. 18 at 10, counsel for Senator McClendon never contacted Plaintiffs' counsel to request Plaintiffs' position on this motion, let alone attempted to "resolve the issue(s)" or determine the "areas of agreement and disagreement" in advance of filing. *See id.* ("Failure of the parties to abide by these requirements can result in a *sua sponte* denial of the motions for failure to comply.").

## II.   BACKGROUND

Plaintiffs filed this action against Alabama Secretary of State John H. Merrill (the "Secretary"), in his official capacity, on June 13, 2018, alleging that Alabama's congressional plan, Ala. Code § 17-14-70, results in a violation of Section 2 of the Voting Rights Act for failing to include an additional majority-minority district. *See* Compl., Dkt. No. 1 ¶¶ 104–09. Plaintiffs seek declaratory and injunctive relief to ensure that the voting rights of African Americans in Alabama are not diluted in violation of the Voting Rights Act. *Id.* at 28.

On July 9, 2018, the Secretary filed a motion to dismiss the complaint, Dkt. No. 11, and a "Notice of Jurisdictional Issue," Dkt. No. 12. Plaintiffs subsequently responded to the jurisdictional issues raised in the Secretary's pleadings, *see* Dkt. No. 15, and filed an amended complaint, Dkt. No. 14. Two weeks later, the Secretary filed an answer to the amended complaint. Dkt. No. 17.

Senator McClendon filed a motion to intervene as a defendant in this lawsuit on August 27, 2018, Dkt. No. 19 ("Mot.")—75 days after Plaintiffs filed the original complaint and 21 days after the Secretary answered the amended complaint. The Court subsequently issued an Order to Show Cause requesting a response to the Motion, Dkt. No. 21, and the Secretary filed a response in support of the Motion, Dkt. No. 22.

### III.   ARGUMENT

"A party seeking to intervene under Rule [24(b)(1)(B)] must show that: (1) his application to intervene is timely; and (2) his claim or defense and the main action have a question of law or fact in common." *Chiles v. Thornburgh*, 865 F.2d 1197, 1213 (11th Cir. 1989). Even if both of these requirements are met, however, the district court has the discretion to deny intervention, and its decision is reviewed for an abuse of discretion. *Id.*; *see also Purcell v. BankAtlantic Fin. Corp.*, 85 F.3d 1508, 1513 (11th Cir. 1996) (quoting *Worlds v. Dep't of Health & Rehabilitative Servs., Fla.*, 929 F.2d 591, 595 (11th Cir. 1991)) ("'[I]t is wholly discretionary with the court whether to allow intervention under Rule 24(b) and even though there is a common question of law or fact, or the requirements of Rule 24(b) are otherwise satisfied, the court may refuse to allow intervention.'"). The Court should exercise its discretion to deny intervention here where Senator McClendon lacks any cognizable interest in this litigation, let alone one that is not already adequately represented by Defendant, and his participation as a party in this case promises to unnecessarily protract every phase of the litigation to the prejudice of Plaintiffs' ability to obtain timely relief.

3

### A.   Senator McClendon's Interest in this Litigation Is Not Legally Cognizable and Is Adequately Represented by Defendant

Senator McClendon asserts that he satisfies the standard for permissive intervention because he "'has a claim or defense that shares with the main action a common question of law or fact.'" Mot. ¶ 6 (quoting Fed. R. Civ. P. 24(b)(1)(B)). But even if he did satisfy this threshold standard, his lack of any significant protectable interest in this litigation, combined with his failure to demonstrate that the Secretary's defense of the congressional plan will be in any way inadequate, reveals there is no basis for permissive intervention here.

As an initial matter, it is telling that Senator McClendon does not seek intervention as of right under Rule 24(a), implicitly conceding that he cannot satisfy the requisite elements. *See Chiles*, 865 F.2d at 1213 ("A party seeking to intervene as of right under Rule 24(a)(2) must show that: (1) his application to intervene is timely; (2) he has an interest relating to the property or transaction which is the subject of the action; (3) he is so situated that disposition of the action, as a practical matter, may impede or impair his ability to protect that interest; and (4) his interest is represented inadequately by the existing parties to the suit."); *Am. Fed'n of State, Cty., and Mun. Emps. (AFSCME) Council 79 v. Scott*, 278 F.R.D. 664, 668 (S.D. Fla. 2011) ("All four elements of Rule 24(a)(2) must be met before intervention of right will be permitted."). Courts routinely "consider the same facts and

4

circumstances used to determine whether intervention was appropriate under Rule 24(a) to determine whether the court should use its discretion to permit intervention under Rule 24(b)." *Cmty. Vocational Schs. of Pittsburgh, Inc. v. Mildon Bus Lines, Inc.*, No. 09-1572, 2017 WL 1376298, at *8 (W.D. Pa. Apr. 17, 2017); *see also Chiles*, 865 at 1215 (affirming denial of Rule 24(a) and 24(b) intervention motions because movant's interest was adequately represented); *Purcell*, 85 F.3d at 1513–14 (affirming denial of Rule 24(a) and 24(b) intervention motions because movant's interest was too remote to justify intervention).

The circumstances here do not warrant intervention under any standard. It is beyond dispute that Senator McClendon would not have been a properly named defendant in this action, as he lacks the authority to conduct congressional elections in Alabama or otherwise enforce or administer the congressional plan. *See Lowery v. Governor of Ga.*, 506 F. App'x 885, 886 (11th Cir. 2013) (affirming dismissal Voting Rights Act case because defendant had "no power to provide any of the relief requested"); *see also Williams Island Synagogue, Inc. v. City of Aventura*, 222 F.R.D. 554, 557 (S.D. Fla. 2004) (denying intervention as defendant because plaintiff could assert no claim against intervenor), *aff'd sub nom. 2600 Island Blvd. Condo v. City of Aventura, Fla.*, 138 F. App'x 299 (11th Cir. 2005). Rather, Senator McClendon's sole argument in favor of permissive intervention is that, as "a former

and prospective future Chair of the Reapportionment Committee" and "author" of the congressional plan "and other redistricting plans," he is "particularly well informed to contribute to the defense of the State's congressional redistricting plan" and brings significant "redistricting experience" to the table. Mot. ¶¶ 8–9. But despite his knowledge of the congressional plan, Senator McClendon's mere desire to defend a legislative enactment does not translate into a cognizable interest in the litigation. *See Chiles*, 865 F.2d at 1212 ("The focus . . . of a Rule 24 inquiry is whether the intervenor has a legally protectable interest in the litigation."); *Am. Ass'n of People With Disabilities v. Herrera*, 257 F.R.D. 236, 259 (D.N.M. 2008) (denying permissive intervention in voting rights case because "while the proposed intervenors might be able to help develop the factual and legal issues in this case, the Court does not believe that such assistance will outweigh the detriment of increased delay").[2]

Senator McClendon's rationale, based on sheer familiarity with the statute being challenged, would justify legislator intervention in any challenge to a state

---

[2] Although the Eleventh Circuit has held that an intervenor need not have standing to intervene permissively, *Chiles*, 865 F.2d at 1212–13, the Supreme Court's decision in *Town of Chester, N.Y. v. Laroe Estates, Inc.*, 137 S. Ct. 1645, 1651 (2017), has cast doubt on that conclusion. *See Seneca Res. Corp. v. Highland Twp.*, No. 16-CV-289, 2017 WL 4168472, at *6 (W.D. Pa. Sept. 20, 2017) (denying permissive intervention on standing grounds). Regardless, the Eleventh Circuit has also recognized that "standing cases . . . are relevant to help define the type of interest that [a proposed] intervenor must assert." *Chiles*, 865 F.2d at 1213.

statute, but courts routinely deny intervention to individual legislators seeking to defend the validity of the laws they helped enact. *See, e.g.*, *One Wis. Inst., Inc. v. Nichol*, 310 F.R.D. 394, 397 (W.D. Wis. 2015) (rejecting the argument in a voting rights case that "a legislator's personal support for a piece of challenged legislation gave rise to an interest sufficient to support intervention as a matter of right," as it would mean "legislators would have the right to participate in every case involving a constitutional challenge to a state statute"); *Lee v. Va. State Bd. of Elections*, No. 15-357, 2015 WL 5178993, at *4 (E.D. Va. Sept. 4, 2015) ("Senator Obenshain is not entitled to intervene as of right simply because he sponsored the Voter ID legislation[.]"); *Buquer v. City of Indianapolis*, No. 1:11-cv-00708-SEB-MJD, 2013 WL 1332137, at *3 (S.D. Ind. Mar. 28, 2013) (holding state legislators' interest in defending legislation that they sponsored did not entitle them to intervene); *United States v. Arizona*, No. CV 10-1413-PHX-SRB, 2010 WL 11470582, at *2 (D. Ariz. Oct. 28, 2010) ("The Court is not aware of any authority giving an individual sponsor of a piece of legislation a 'significantly protectable' interest in a lawsuit simply by virtue of that person's involvement in the law's passage.").[3] In short, "Rule 24 is not

---

[3] The cases Senator McClendon cites in support of intervention, *see* Mot. ¶¶ 13–14, are either inapposite, *see, e.g.*, *Ala. Legislative Black Caucus v. Alabama*, 989 F.Supp.2d 1227, 1237 (M.D. Ala. 2013) (granting unopposed motion to intervene as defendants in a state legislative redistricting case brought by state legislators); *Scott v. U.S. Dep't of Justice*, 920 F. Supp. 1248, 1250 (M.D. Fla. 1996) (permitting intervention in challenge to specific district to Florida Senate as a whole

designed to turn the courtroom into a forum for political actors who claim ownership of the laws that they pass." *One Wis.*, 310 F.R.D. at 397.

Even if Senator McClendon could assert a cognizable interest in the litigation, there is no basis for intervention—as of right or pursuant to the Court's discretion—where, as here, the proposed intervenor's interests will be adequately represented by the named defendant. Not only is adequate representation by the existing parties fatal to intervention as of right under Rule 24(a), it is often the basis for denying permissive intervention under Rule 24(b). *See, e.g.*, *id.* at 399 (denying legislator's permissive intervention in a voting rights case where state attorney general "is adequately pursuing the outcome that the proposed intervenors seek"); *Lee*, 2015 WL 5178993, at *4 ("A court does not err in exercising its discretion by denying a motion to intervene when undue delay exist without a corresponding benefit . . . , especially where an existing party zealously pursues the same ultimate objectives as a movant."); *AFSCME*, 278 F.R.D. at 671 (denying permissive interventions where the interests of defendant Governor and proposed intervenor Secretary of State were "closely aligned"); *Arizona*, 2010 WL 11470582, at *4 (denying permissive intervention because state senator did "not demonstrate[] that the Governor's

---

and incumbent representative of that district), or entirely uninformative. Indeed, not one of the cases he cites provides a reasoned basis for allowing intervention, and intervention was unopposed in at least three of them.

defense of [the law] is inadequate, regardless of whether his asserted defenses shares a question of law or fact with [the defendant's]"); *Am. Ass'n of People With Disabilities*, 257 F.R.D. at 259 (denying permissive intervention in voting rights case because "Defendant is adequately representing any interests the prospective intervenors have in the litigation").

In the Eleventh Circuit, it is "'presume[d] that a proposed intervenor's interest is adequately represented when an existing party pursues the same ultimate objective as the party seeking intervention." *United States v. Georgia*, 19 F. 3d 1388, 1394 (11th Cir. 1994) (quoting *FSLIC v. Falls Chase Special Taxing Dist.*, 983 F.2d 211, 215 (11th Cir. 1993)); *see also Meek v. Metro. Dade Cty., Fla.*, 985 F.2d 1471, 1477 (11th Cir. 1993) ("When applicants for intervention seek to achieve the same objectives as an existing party in the case, that party is presumed to represent the applicants' interests adequately."). Here, both the Secretary and Senator McClendon share the "ultimate objective" of defending the validity of the congressional plan. *See* Dkt. No. 17 at 18–20; Dkt. No. 19 ¶ 7. Senator McClendon does not even suggest that the Secretary's defense of the congressional plan will be inadequate, let alone rebut the presumption of adequate representation by providing evidence of "collusion," adverse interest, or a failure by the Secretary to "fulfill[] his duty" to

defend the statute. *Meek*, 985 F.2d at 1478.[4] Indeed, the Secretary's intention to defend this action vigorously is crystal clear. Not only did the Secretary file both a motion to dismiss and a "Notice of Jurisdictional Issue" raising many of the same arguments Senator McClendon raises in his proposed motion to dismiss, *see* Dkt. Nos. 11, 12, but he has further flagged his intent to "file a motion for judgment on the pleadings adopting the arguments raised by Senator McClendon," Dkt. No. 20 at 3; *accord* Dkt. No. 22 at 2–3. *See General Synod of the United Church of Christ v. Resinger*, 2014 WL 5094093, at *2 ("Review of the pleadings in this matter reveals that the interests of the proposed intervenors and the state defendants are identical—to uphold and defend the laws of the State of North Carolina—and that these interests have been adequately represented by the Attorney General throughout this litigation.").

---

[4] Notably, while the Eleventh Circuit has not expressly addressed whether a heightened showing of inadequacy is required where the proposed intervenor shares the same objective as a government entity, "every circuit to rule on the matter" has demanded an especially "strong" showing of inadequacy where a state defendant is defending against a challenge to a state statute. *Stuart v. Huff*, 706 F.3d 345, 351 (4th Cir. 2013); *Buquer*, 2013 WL 1332137, at *5 ("[W]here the governmental entity responsible for protecting the interests of intervenors is the party accused of inadequacy, the Seventh Circuit has held that 'the representative party is presumed to adequately represent [the proposed intervenors'] interests unless there is a showing of gross negligence or bad faith.'"); *Arizona*, 2010 WL 11470582, at *3 ("Where the government is acting on behalf of a constituency that it represents, there is also an assumption of adequacy in the absence of a 'very compelling showing' that it is inadequate.") (quoting *Arakaki v. Cayetano*, 324 F.3d 1078, 1086 (9th Cir. 2003)).

Senator McClendon speculates that if the court enjoins the congressional plan and allows the Alabama Legislature an opportunity to draw a remedy map, and if the Legislature takes up the task of drawing new congressional districts and appoints him chair of the Reapportionment Committee, then he "would necessarily be at the center of that activity." Mot. ¶ 9. But even if those circumstances came to pass, Senator McClendon's purported interest in "protecting the congressional districts drawn in 2012, and in defending the Reapportionment Committee's and the Legislature's redistricting prerogatives," Mot. ¶ 10, would be impaired only if the current congressional plan is deemed a violation of Section 2 of the Voting Rights Act. Accordingly, Senator McClendon's and the Secretary's interests are "directly aligned." *AFSCME*, 278 F.R.D. at 670 (denying intervention to secretary of state where his interests in defending the underlying statute would be impaired only if the executive order challenged by the plaintiffs and defended by the governor were ruled unconstitutional). While Senator McClendon "may have a particularized interest and fervent desire to protect the statute, 'stronger, more specific interests do not adverse interests make.'" *United States v. North Carolina*, No. 1:13CV861, 2014 WL 494911, at *3 (M.D.N.C. Feb. 6, 2014) (quoting *Stuart*, 706 F.3d at 353). And even if Senator McClendon might litigate this case differently than the Secretary in some particulars, which he has not shown, mere differences in litigation strategy would

not justify intervention. *See, e.g.*, *Stuart*, 706 F.3d at 353 ("[D]isagreement over how to approach the conduct of the litigation is not enough to rebut the presumption of adequacy."); *Buquer*, 2013 WL 1332137, at \*3 (denying intervention where the legislators and "proposed intervenors merely disagree with the litigation strategy decisions made by the [state] Attorney General"). If Senator McClendon does actually hold different views from the Secretary of State, he could equally express those perspectives as an amicus during the merits or remedy phase of this case.[5]

"[W]hen intervention of right is denied for the proposed intervenor's failure to overcome the presumption of adequate representation by the government, the case for permissive intervention disappears." *One Wis.*, 310 F.R.D. at 399 (citation omitted); *see also U.S. Postal Serv. v. Brennan*, 579 F.2d 188, 191–92 (2d Cir. 1978) (quoting *Spangler v. Pasadena City Bd. of Educ.*, 552 F.2d 1326, 1329 (9th Cir. 1977)) (noting whether intervenor's "interests are 'adequately represented by the other parties'" is a factor in whether to grant permissive intervention); *Johnson v. Mortham*, 915 F. Supp. 1529, 1536–37 (N.D. Fla. 1995) (denying permissive intervention because movants' interests were adequately represented); p. 8, *supra*

---

[5] *See Lee*, 2015 WL 5178993, at \*5 (denying intervention because "the Court fails to see any benefit that permitting intervention would provide which allowing the Proposed Intervenors the opportunity to participate as *amici curiae* would not"); *League of Women Voters of Pa. v. Commonwealth*, 181 A.3d 1083, 1086 n. 7 (Pa. 2018) (accepting amicus submissions proposing remedial plans).

(citing additional cases). This is all the more true where the proposed intervenor doesn't even attempt to overcome the presumption. Here, even if Senator McClendon's asserted defenses shares a question of law or fact with the main action, any interest asserted by Senator McClendon is both legally uncognizable and adequately represented by the Secretary. Accordingly, the Court should exercise its discretion to deny intervention.

### B.   Senator McClendon Is Not the Agency or Officer that Administers Congressional Elections in Alabama

In the alternative, Senator McClendon seeks intervention under Federal Rule of Civil Procedure 24(b)(2), which provides that a court "*may permit* a . . . state governmental officer or agency . . . to intervene if a party's claim or defense is based on" either a "statute . . . administered by the officer or agency" or a "regulation, order, requirement, or agreement issued or made under the statute." *See* Mot. ¶ 11. Senator McClendon devotes a single, two-sentence paragraph—with no citation to case law—to this argument, contending that because the lawsuit "challenges how the Reapportionment Committee fulfilled its statutory duties . . . to draw new congressional districts," Mot. ¶ 12, he apparently qualifies as a "state" "officer" who "administers" a "statute," Fed. R. Civ. P. 24(b)(2). This claim is baseless. The only law being challenged here is Alabama Code section 17-14-70, the state's current

congressional plan. Regardless of his role in crafting that plan, Senator McClendon by no means "administers" it. On the contrary, while "a legislative body promulgates, debates, and passes laws . . ., it is not even arguable that the legislature administers or enforces those laws." *Gen. Synod of the United Church of Christ*, 2014 WL 5094093, at *3 (denying motion to intervene of state's Speaker of the House and President Pro Tempore of the Senate under Rule 24(b)(2)). Administration of the congressional plan and state election laws is within the province of the Secretary, not the Legislature. *See* Ala. Code § 17-1-3(a).[6] An individual legislator simply does not fulfill the quintessentially executive function to administer the law.

---

[6] Senator McClendon's apparent suggestion that Reapportionment Committee's Guidelines constitute a "requirement . . . issued or made under the statute," *see* Mot. ¶ 11, fails on at least two grounds. First, even if the Guidelines were a "requirement," they are not "under the statute" at issue here, and, as set forth above, Senator McClendon does not "administer" that statute. In any event, Senator McClendon's purported defense of the Reapportionment Committee's process for or priorities in drawing congressional districts fails to recognize that Plaintiffs allege only discriminatory results from the redistricting plan under Section 2 of the Voting Rights Act, not discriminatory intent or racial predominance in the map-drawing process. *See Abbott v. Perez*, 138 S. Ct. 2305, 2330–31 (2018) (listing requirements for a Section 2 violation absent a finding of intentional discrimination); *Nipper v. Smith*, 39 F.3d 1494, 1524 (11th Cir. 1994) (holding the results test for a Section 2 violation does not "require discriminatory intent on the part of legislators").

**C.    Intervention Would Unduly Delay this Case**

Rule 24(b)(3) mandates that "[i]n exercising its discretion [regarding permissive intervention], the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3). The timeliness analysis concerns both "the chronology leading up to the motion for intervention" and additional circumstances, including: "'1. [t]he length of time during which the would-be intervenor knew or reasonably should have known of his interest in the case before he petitioned for leave to intervene . . . 2. [t]he extent of prejudice that the existing parties . . . may suffer as a result of the would-be intervenor's failure to apply . . . as soon as he actually knew or reasonably should have known of his interest . . . 3. [t]he extent of the prejudice [to] the would-be intervenor . . . if his petition . . . is denied; [and] 4. the existence of unusual circumstances militating either for or against a determination that the application is timely.'" *Meek*, 985 F.2d at 1478–79 (quoting *Stallworth v. Monsanto Co.*, 558 F.2d 257, 263–66 (5th Cir. 1977)). The timeliness standard is applied more stringently to permissive intervention than to intervention as of right. *See Stallworth*, 558 F.2d at 266. And of course, even if the motion is timely, a court may deny intervention in the sound exercise of its discretion. *Chiles*, 865 F.2d at 1213.

"[T]he introduction of additional parties inevitably delays proceedings." *Athens Lumber Co. v. Fed. Election Comm'n*, 690 F.2d 1364, 1367 (11th Cir. 1982). The involvement of Senator McClendon here would almost certainly result in delay, increase litigation costs, and unnecessarily complicate discovery and trial. Having two parties defending the case will surely result in redundant sets of document requests, redundant questioning in depositions and at trial, duplication of expert testimony, and redundant briefing. *See, e.g.*, *North Carolina*, 2014 WL 494911, at *5 (denying intervention in a voting rights case because proposed intervenors would "consume additional and unnecessary judicial resources, further complicate the discovery process, potentially unduly delay the adjudication of the case on the merits, and generate little, if any, corresponding benefit to the existing parties"); *One Wis.*, 310 F.R.D. at 399 ("[A]dding the proposed intervenors could unnecessarily complicate and delay all stages of this case: discovery, dispositive motions, and trial—even if the proposed intervenors forgo filing a pre-answer motion.").

In fact, Senator McClendon's proposed intervention has already delayed the case to Plaintiffs' detriment. After the Secretary's *two* motions in response to the original complaint had been fully briefed, an amended complaint filed, and the Secretary's answer submitted, Senator McClendon seeks to file a new motion to dismiss. *See* Dkt. No. 19-1. Not only would this require Plaintiffs to respond to

16

duplicative issues in seriatim, Senator McClendon assures the court that he will seek *further* delay if his motion to dismiss is denied by requesting certification for an interlocutory appeal. *See id.* at 8. Indeed, the Secretary himself has only capitalized on the potential for delay introduced by Senator McClendon's proposed intervention by refusing to engage in discovery until Senator McClendon's motion to dismiss and any appeal is fully resolved, despite having answered the amended complaint, and contrary to this Court's Initial Order. *See* Dkt. No. 20 at 5.[7]

The prejudice to Plaintiffs is only amplified in this voting rights action for injunctive relief ahead of a scheduled election. If relief is not in place in time for the 2020 Congressional elections, Plaintiffs' right to vote in that election untainted by a violation of federal law will be forever lost. *See Reynolds v. Sims*, 377 U.S. 533, 585 (1964) ("With respect to the timing of relief, a court can reasonably endeavor to avoid a disruption of the election process which might result from requiring precipitate changes . . . ."); *One Wis.*, 310 F.R.D. at 399 (denying legislators' permissive intervention motion because voting rights cases "require[] a higher-than-usual commitment to a swift resolution" because "the court must resolve these challenges well ahead of the [general] election"); *Am. Ass'n of People With*

---

[7] Plaintiffs served their initial disclosures on September 4, 2018, 14 days after the 26(f) conference, Dkt. No. 20 ¶ 1, in accordance with Federal Rule of Civil Procedure 26(a)(1)(C).

*Disabilities*, 257 F.R.D. at 259 (denying intervention motion in voting rights case due to risk of prejudice from delay). Consequently, the risk of prejudice to Plaintiffs caused by delay introduced by Senator McClendon's participation is significant.

On the other hand, the prejudice to Senator McClendon is slight or nonexistent because the Secretary of State's defense of this action is clearly adequate to represent Senator McClendon's interest. *See* § III.A, *supra*; *Chiles*, 865 F.2d at 1215 ("The duplicative nature of the claims and interests they asserted threatens to unduly delay the adjudication of the rights of the parties in the lawsuit and makes it unlikely that any new light will be shed on the issues to be adjudicated."). Thus, under the circumstances of this case, intervention should be denied.

## IV.   CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court exercise its discretion to deny Senator McClendon's Motion to Intervene.

Dated:  September 10, 2018          Respectfully submitted,

By /s/ *Aria Branch*_____
Marc Erik Elias (*admitted pro hac vice*)
Bruce V. Spiva (*admitted pro hac vice*)
Aria C. Branch (*admitted pro hac vice*)
**Perkins Coie, LLP**
700 13th St. N.W., Suite 600
Washington, D.C. 20005-3960
Phone: (202) 654-6338
Fax: (202) 654-9106
Email: MElias@perkinscoie.com
Email: BSpiva@perkinscoie.com
Email: ABranch@perkinscoie.com

Abha Khanna (*admitted pro hac vice*)
**Perkins Coie, LLP**
1201 Third Avenue, Ste. 4900
Seattle, WA 98101-3099
Phone: (206) 359-8000
Fax: (206) 359-9000
Email: AKhanna@perkinscoie.com

By: /s/ *Richard P. Rouco*_____
Richard P. Rouco
(AL Bar. No. 6182-R76R)
**Quinn, Connor, Weaver, Davies & Rouco
LLP**
Two North Twentieth
2-20th Street North, Suite 930
Birmingham, AL 35203
Phone: (205) 870-9989
Fax: (205) 803-4143
Email: rrouco@qcwdr.com

*Attorneys for Plaintiffs*

19

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 10th day of September 2018, I filed the foregoing

Plaintiffs' Brief in Opposition to Senator Jim McClendon's Motion to Intervene

with the Clerk of Court using the CM/ECF system, which will send notification of

the filing to all counsel of record.


By <u>*/s/ Aria Branch*</u>
Aria C. Branch (*admitted pro hac vice*)
**Perkins Coie, LLP**
700 13th St. N.W., Suite 600
Washington, D.C. 20005-3960
Phone: (202) 654-6338
Fax: (202) 654-9106
Email: ABranch@perkinscoie.com

*Counsel for Plaintiffs*