IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| LAKEISHA CHESTNUT, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Case No. 2:18-CV-00907-KOB |
| ) | |
| JOHN H. MERRILL, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION

This matter comes before the court on Defendant's "Motion for Judgment on the Pleadings." (Doc. 27). Defendant first raises jurisdiction—specifically whether this court must refer this case to a three-judge panel pursuant to 28 U.S.C. § 2284(a). The court always must determine whether it has jurisdiction before proceeding in any case. So, while Defendant raised several issues in his motion, the court will only address in this Memorandum Opinion whether it lacks jurisdiction and must refer this case to a three-judge panel.

Under § 2284, as relevant here, a three-judge panel must hear a case if the case either (1) raises a constitutional challenge to an apportionment of congressional districts or (2) is "otherwise required by Act of Congress" to be heard by a panel. Plaintiffs allege that the Alabama congressional redistricting plan violates Section 2 of the Voting Rights Act, 52 U.S.C. § 10301, but do *not* allege a constitutional violation. Section 2 does not require challenges brought under its authority to be heard by a three-judge panel.

1

Defendant first raised this jurisdictional question in his "Notice of Jurisdictional Issue" on July 9, 2018.[1] (Doc. 12). On November 2, 2018, Defendant filed his "Motion for Judgment on the Pleadings" in which he contends that this court lacks jurisdiction because a three-judge panel must hear this case. (Doc. 27). Plaintiffs filed "Plaintiffs' Brief in Opposition to Defendant's Motion for Judgment on the Pleadings" on November 30, 2018. (Doc. 31). On December 21, 2018, Defendant filed "Secretary of State John Merrill's Reply in Support of His Motion for Judgment on the Pleadings (Doc. 27)." (Doc. 37). On January 16, 2019, this court held a motion hearing on the issue of whether a three-judge panel must hear this case. (Doc. 35). The jurisdictional issue is now ripe for review.

**I. Background**

Plaintiffs are eight African-American citizens of Alabama. One Plaintiff resides in Congressional District (CD) 1, one resides in CD 2, one resides in CD 3, and five reside in CD 7. The redistricting plan currently used in Alabama, Senate Bill 484, allegedly "packs" African-American voters into CD 7. *See* S.B. 484, 2011 Reg. Sess. (Ala. 2011). The Alabama legislature established CD 7 as a majority-minority district following the 1982 Amendments of the Voting Rights Act. Nearly one-third of Alabama's African-American population falls into CD 7. Prior to the passage of S.B. 484, the black voting age population (BVAP) of CD 7 was 58.33%. Now, the CD 7 BVAP is 60.91%. Plaintiffs argue that S.B. 484 moved African-American voters from predominantly white districts into CD 7 to "pack" the district designated as a majority-minority

---

[1] Although the Federal Rules of Civil Procedure do not recognize a "notice" as an appropriate motion of pleading or filing, and Defendant's "notice" did not ask the court to take any action, the court did evaluate its jurisdiction without formally addressing the issue in writing. Because Plaintiffs did not assert a constitutional claim, the undersigned determined that the statutory claim did not trigger a three-judge court under § 2284. By contrast, Defendant's motion for judgment on the pleadings does ask the court to openly address the jurisdictional question, so the court now reviews its jurisdiction for a second time in this Memorandum Opinion.

2

district with African-American voters. The plan also allegedly "cracks" African-American voters in CDs 1, 2, and 3 by splitting among three districts those African-American voters who could be grouped together in a second majority-minority district. Plaintiffs contend that the African-American population in these districts could be united to form a second majority-minority CD.

Plaintiffs only raise a Section 2 violation of the Voting Rights Act, alleging vote dilution. They do *not* raise a constitutional challenge to the redistricting plan.

Defendant requests a three-judge panel under 28 U.S.C. § 2284. Defendant concedes that this case does not fall within the express language of § 2284's requirements for a three-judge panel. But Defendant argues that Plaintiffs selectively brought only a statutory claim precisely to avoid a three-judge panel, and, because the statutory claim is so similar to the corresponding constitutional claim Plaintiffs deliberately omitted, a three-judge panel should still hear the case. Further, Defendant maintains that the legislative history behind the 1976 amendments to § 2284 and the policies behind § 2284 coupled with the Voting Rights Act lean in favor of convening a three-judge panel to hear this case.

Plaintiffs contend that this case should not go to a three-judge panel because § 2284(a) plainly states that a three-judge panel shall only be convened when challenging the *constitutionality* of the apportionment of congressional districts or "when otherwise required by Act of Congress." Plaintiffs maintain that "the plaintiff [is] the master of the claim," so the court should honor their decision not to bring a constitutional challenge. *See Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 12 (2003) (Scalia, J., dissenting) (quoting *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987)). Further, Plaintiffs argue that Section 2 does not require a three-judge panel, so Section 2 cannot be considered an Act of Congress "otherwise" requiring a three-judge panel to hear the case.

3

## II. Standard of Review

Federal Rule of Civil Procedure 12(h)(3) states that "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Indeed, "it is incumbent upon [a] federal court[] . . . to constantly examine the basis of jurisdiction, doing so on [its] own motion if necessary." *Save the Bay, Inc. v. U.S. Army*, 639 F.2d 1100, 1102 (5th Cir. 1981) (citing Rule 12(h)(3)); *see also Louisville & Nashville R.R. v. Mottley*, 211 U.S. 149, 152 (1908) ("[I]t is the duty of this court to see to it that the jurisdiction of the circuit court, which is defined and limited by statute, is not exceeded.").

## III. Discussion

Here, the parties do not contest whether a federal court may hear this case, but whether a three-judge panel must hear this case. Under 28 U.S.C. § 2284(a), "a district court of three judges shall be convened when otherwise required by Act of Congress, or when an action is filed challenging the constitutionality of the apportionment of congressional districts or the apportionment of any statewide legislative body." If the court determines that the case must be heard by a three-judge panel, "the judge to whom the request is presented shall . . . immediately notify the chief judge of the circuit." *Id.* § 2284(b)(1). If a three-judge panel is convened, a single judge may not enter a judgment on the merits. *Id.* § 2284(b)(3). So, this court must determine the jurisdictional question of whether this case is properly before a single judge before the case can continue.

On its face, Plaintiffs' complaint only brings an action under Section 2 of the Voting Rights Act—not under the 14th or 15th Amendments, which often accompany Section 2 causes of action; not under any other constitutional provision; and not under any act of Congress that "otherwise require[s]" a three-judge court.

4

A claim solely alleging a Section 2 violation falls outside a plain reading of § 2284. Such a claim is neither a constitutional challenge nor "when otherwise required by Act of Congress." A few provisions in the Voting Rights Act require a three-judge panel to hear certain actions. *See* Voting Rights Act of 1965, 52 U.S.C. §§ 10303(a)(5), 10304(a) (2012) (requiring a three-judge panel to hear Section 4 challenges and Section 5 challenges). But no provision of the Voting Rights Act requires a violation of Section 2 to go to a three-judge panel. So, Section 2 of the Voting Rights Act cannot be considered "when otherwise required by Act of Congress" within § 2284(a) to require a three-judge panel for this case.

The parties agree that a strict reading of the text of § 2284 excludes a Section 2 Voting Rights Act challenge—without a corresponding constitutional challenge—from the requirement to be heard by a three-judge panel.

Defendant recognizes that Plaintiffs' complaint only asserts a claim under Section 2 of the Voting Rights Act and not a constitutional violation. Defendant also recognizes that in 1976, when Congress amended § 2284, Congress made the amendments to *limit* the number of cases requiring a three-judge panel. And Defendant recognizes that § 2284 plainly reads: "A district court of three judges shall be convened when otherwise required by Act of Congress, or when an action is filed challenging the constitutionality of the apportionment of the congressional districts or the apportionment of any statewide legislative body."

But Defendant wants this court to read beyond the plain text of the statute. Defendant wants this court *to read into* Section 2 a requirement that such a challenge *must* go to a three-judge panel, or *to strike* "constitutional" from the requirements to invoke a three-judge panel in § 2284. The court sees no need to go beyond the text of Section 2 or § 2284 when their plain meanings are so clear.

5

As the Supreme Court noted long ago, "when words are free from doubt they must be taken as the final expression of the legislative intent . . . . In other words, the language being plain, and not leading to absurd or wholly impracticable consequences, it is the sole evidence of the ultimate legislative intent." *Caminetti v. United States*, 242 U.S. 470, 490 (1917). Canons of construction cannot be used "to create ambiguity where the statute's text and structure suggest none." *Ali v. Fed. Bureau of Prisons*, 552 U.S. 214, 227 (2008). Here, the court can find no ambiguity on the face of § 2284. Because the statute is unambiguous, the court sees no reason to go beyond the text.

Even assuming the court had free rein to look beyond the text, Defendant's arguments for doing so fail. Defendant contends that the court should read into § 2284 congressional intent to include Section 2 challenges in addition to constitutional challenges to congressional and statewide legislative apportionment plans as matters to be heard by a three-judge panel. To do so, Defendant relies on a Justice Scalia quote: "This canon [of reading a statute fairly] follows inevitably from the facts that (1) interpretation always depends on context, (2) context always includes evident purpose, and (3) evident purpose always includes effectiveness." Antonin Scalia & Bryan A. Garner, *Reading Law* 63 (2012).

Defendant argues that "when Congress last amended § 2284(a), it had no idea that in the future there would be a statutory claim for vote dilution." (Doc. 37 at 6). Defendant cites to a Senate Report from the 1976 amendments to § 2284 as evidence that Congress would have intended for Section 2 violations to be heard by a three-judge panel. (*Id.* at 4). The Senate Report explains that "[t]he bill preserves three-judge courts for cases involving congressional reapportionment . . . because it is the judgment of the committee that these issues are of such importance that they ought to be heard by a three-judge court." S. Rep. No. 94-204, at 9 (1976).

And, as noted by Defendant in the motion hearing, Congress designed the panel format "to lend greater dignity to the proceedings." *See* Michael E. Solimine, *The Three-Judge District Court in Voting Rights Litigation*, 30 U. Mich. J.L. Reform 79, 84 (1996).

The court recognizes Defendant's point that, when Congress amended § 2284 in 1976, litigators did not yet understand that congressional apportionment plans could be challenged under Section 2, and so Congress did not know at that time that § 2284 could subsequently be used to prevent Section 2 challenges from being heard by three-judge panels. *See Page v. Bartels*, 248 F.3d 175, 189 (3d Cir. 2001) ("[I]n 1976 . . . § 2 of the Voting Rights Act was not available to litigants seeking to challenge apportionment. At that time, apportionment challenges were generally constitutional in nature."). Nevertheless, Congress *could* have so amended Section 2 had it desired to send those cases invoking it to a three-judge court. But currently, § 2284 and Section 2—reading them together and separately—do not provide three-judge panels for purely statutory Section 2 challenges.

Congress has reviewed both the statutes since the 1976 amendments of § 2284. In 1976, Congress amended § 2284 to read as it does today. Act of Aug. 12, 1976, Pub. L. No. 94-381, 90 Stat. 1119. And in 1982, Congress amended the Voting Rights Act so that Section 2 reads as it does today. Act of June 29, 1982, Pub. L. 97-205, 96 Stat. 134. That amendment changed the numbering of subsections and revised the declaratory judgment proceedings under Section 2, but did not amend Section 2 to place cases brought solely under its authority within the "otherwise required by Act of Congress" provision in § 2284. In 1984, Congress amended § 2284 for a second time, but did not change subsection (a). Act of Nov. 9, 1984, Pub. L. No. 98-620, sec. 402, § 29(e), 98 Stat. 3335, 3359.

When Congress amended Section 2 of the Voting Rights Act in 1982, it could have amended—but did not—the Voting Rights Act to add a provision directing all Section 2 challenges to be heard by a three-judge panel. Even beyond 1982, Congress could have amended the Voting Rights Act at any point between 1976 and the present to add such a provision. That is, Congress could amend the statute to send the case to a three-judge panel "as otherwise required by Act of Congress" pursuant to § 2284.

Perhaps Defendant forgot that Congress revisited both statutes since the 1976 amendments to § 2284 and could have addressed the subsequent use of Section 2 of which—according to Defendant—Congress "had no idea" in 1976. (Doc. 37 at 6).

The court must presume that Congress knows the laws it has enacted. *See Cannon v. Univ. of Chi.*, 441 U.S. 677, 696–97 (1979) ("It is always appropriate to assume that our elected representatives . . . know the law . . . ."). Indeed, congressional staffers are dedicated to researching proposed and current legislation and the effects such legislation may have on other statutes. The U.S. House of Representatives' Office of Legislative Counsel must determine "[w]hat is the relation between the policy [to be legislated] and existing law" and "[m]ust existing law be amended to avoid conflicts with the policy[.]" U.S. House of Representatives, *Approaching a Problem*, OFF. LEGIS. COUNS., http://legcounsel.house.gov/HOLC/ Before_Drafting/Approaching_a_Problem.html (last visited Jan. 16, 2019). Likewise, the Senate's Office of Legislative Counsel makes similar determinations: "A new [legislative] measure must be carefully related to earlier enactments to produce, to the maximum extent practicable, a consistent body of law that will carry the congressional purpose into effect without producing unintended consequences." U.S. Senate, *Responsibilities of the Legislative Drafter*,

OFF. LEGIS. COUNS., https://www.slc.senate.gov/Drafting/drafting.htm (last visited Jan. 16, 2019).

The court cannot do Congress's job. Article I firmly vests all legislative powers to Congress. U.S. CONST. art. I, § 1. "Congress is presumed to 'know the law' and has convened many times since a particular statute was enacted or case decided. Because Congress has not seen fit to amend [the statute at issue] . . . it remains unchanged, reliable law." *Wiersum v. U.S. Bank, N.A.*, 785 F.3d 483, 489 n.5 (11th Cir. 2015) (internal citation omitted). If Congress wanted to so amend § 2284 or Section 2, it could have. But Congress did not.

This court intends to remain firmly in its role to apply, not amend, the law. Several cases alleging only Section 2 violations have been heard by single judges. *See Rural W. Tenn. African-American Affairs Council v. Sundquist*, 290 F.3d 835, 838 (6th Cir. 2000) (noting that the underlying case initially alleged both Section 2 and constitutional violations, but "[b]ecause the amended complaint contained no constitutional claims, the three-judge court disbanded"); *see also Bone Shirt v. Hazeltine*, 336 F. Supp. 2d 976 (D.S.D. 2004); *Old Person v. Brown*, 182 F. Supp. 2d 1002 (D. Mont. 2002). Neither the court nor Defendant could find any purely Section 2 cases heard by a three-judge panel. So this court will apply the law before it and will not read new provisions into—or strike existing words from—the statutes at issue.

As Justice Scalia wrote, "Context always matters. Let us not forget, however, *why* context matters: It is a tool for understanding the terms of the law, not an excuse for rewriting them." *King v. Burwell*, 135 S. Ct. 2480, 2497 (2015) (Scalia, J., dissenting). The court refuses to write into § 2284 or into Section 2 a provision requiring complaints alleging Section 2 violations to be heard by a three-judge panel—or alternatively striking "constitutional" from § 2284—so that all apportionment challenges, statutory and constitutional, must be heard by a three-judge

panel. If Defendant believes that Congress has made an oversight in amending § 2284 or Section 2—and perhaps requiring Section 2 challenges to be heard by a three-judge panel would make sense—he can raise that issue with the governmental branch charged with drafting and enacting the law. This court adheres to the principle that "the proper role of the judiciary [is] to apply, not amend, the work of the People's representatives." *Henson v. Santander Consumer USA Inc.*, 137 S. Ct. 1718, 1726 (2017) (Gorsuch, J.).

This court will apply the law as written. Because Plaintiffs' complaint raises a challenge only under Section 2, which is not a constitutional challenge to an apportionment plan or an act of Congress requiring a three-judge panel, the court cannot send this case to a three-judge panel.

### IV. Conclusion

For the reasons discussed above and at the hearing on January 16, 2019, the court will DENY Defendant's motion for a judgment on the pleadings as to the jurisdictional issue. (Doc. 27). This case will remain before this one judge, who will proceed with as much dignity as possible and as necessary given the nature of this case. The court will enter a separate Order consistent with this Memorandum Opinion. Now that the court has expressed confidence in its jurisdiction, the court will move on to separately rule on the remaining issues raised in Defendant's motion for judgment on the pleadings.

**DONE** and **ORDERED** this 28th day of January, 2019.

_____
**KARON OWEN BOWDRE**
CHIEF UNITED STATES DISTRICT JUDGE